JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JAZMIN J. ALAGHA
State Bar No. 026302
Asst. Federal Public Defender
Attorney for Defendant
Jazmin_Alagha@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Sabas Abraham Urias Haro,<br><br>  Defendant. | Case No. CR-22-01565-PHX-SPL<br><br>**SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |

Defendant Mr. Sabas Abraham Urias Haro, through counsel, hereby requests this Honorable Court vary downward and impose a term of 78 months in the above-captioned matter. Mr. Urias Haro submits the following sentencing memorandum Sentencing Memorandum for the Court's consideration at the time of sentencing, currently set for July 7, 2023 at 2:00 PM.

Respectfully submitted:   November 16, 2023.

JON M. SANDS
Federal Public Defender

 *s/Jazmin J. Alagha*

JAZMIN J. ALAGHA
Asst. Federal Public Defender

**SENTENCING MEMORANDUM**

Mr. Urias Haro is a 39-year-old man before the court for the first time in is life due to actions he greatly regrets and which are out of character for him. Mr. Urias Haro has no criminal history, no prior arrests, no negative law enforcement contact, and no immigration history whatsoever. He is a family man that chose the unfortunate path to make easy money due to dire family circumstances. He will now have to pay the consequences of his actions. However, a sentence longer than 78 months is not necessary considering the totality of the circumstances. The requested sentence is appropriate for the following reasons: first, a 78-month sentence would prevent unwarranted disparity among similarly situated defendants and consider the low-risk of recidivism; second, a 78 month sentence is longer than the codefendant while still accounting for the fact that he was not entrusted with the 18 kilos of methamphetamine that the co-defendant possessed and transported; finally, a 78 month sentence would take into consideration the defendant's unique position including his character, history, and motivating circumstances.

## I. GUIDELINES OFFENSE LEVEL CALCULATION

The defense agrees with the calculation noted in the Presentence Report ("PSR"). [DKT #49]. That is, the applicable base offense level is a thirty-five (35) under §2D1.1. The plea agreement recommends a three-level reduction for Acceptance of Responsibility, resulting in a final offense level of thirty-three (33) and a guideline range of 168-210 months under Category I; however, the plea further stipulates cap at the low-end (168 months), and allows for a downward variance. A downward variance to a term of 78 months is appropriate here, as mentioned above, in light of Ms. Urias Haro's background, the offense, and the 18 U.S.C. § 3553 factors.

## II.     BACKGROUND INFORMATION

Mr. Urias Haro is a dedicated husband, to his wife Gabriella Guadalupe Valdez-Madrid. The couple have been together since he was fourteen (14) years old. (PSR 39). Mr. Urias Haro is a dedicated father of two (2) children, ages 16 and 17, whom he has proudly raised with his wife. *Id*. In Mexico, he was the main source of support to his family, working in the food business. (PSR 46). While his work was humble, it was stable, and allowed him to provide for his children and their studies. For Mr. Urias-Haro this was of the utmost importance to him as he had not grown up with similar opportunities. To the contrary, his family struggled financially and grew up with extremely limited means. He and his six (6) siblings would often have to survive on one meal a day and live in a one room home. (PSR 38). Despite their struggles, Mr. Urias-Haro and their family were a close-knit family, and they remain a strong source of support. *Id*. As an adult, he not only provided for his two children and wife, he also helped out financially with his mother's expenses, including medical bills due to her respiratory issues. *Id*.

However, in the recent past, Mr. Urias Haro's life was turned upside down when his wife was found to have several cysts in her breasts. (PSR 39). The cysts needed to be removed. However, following complications and issues with healing of the wounds, his wife required additional surgeries. The expenses were unsurmountable.

While Mr. Urias Haro was no stranger to financial turmoil, Mr. Urias Haro made the decision for the first time in his life to immigrate due to the increasing medical expenses for a chance of being able to provide for his family that he was leaving behind. (PSR 40). Notably, Mr. Urias Haro the PSR corroborates this and notes no prior immigration apprehensions, removals, or deportations. (PSR 36). During the fifteen months that he lived in the United States, Mr. Urias Haro worked in manual labor and found odd jobs in painting houses or landscaping. (PSR 45). Nevertheless, just in the year of 2023, his wife had to endure three surgeries (PSR 39).

It was then that Urias Haro got involved in selling drugs to help pay for the expenses. He is both ashamed and remorseful for his actions and has taken responsibility for his involvement in the present offense.

### III.    18 USC § 3553 FACTORS

According to 18 U.S.C.§3553(a), often called the "parsimony" provision, "[t]he court shall impose a sentence sufficient, but *no greater than necessary* to comply with the purposes set forth in the paragraph (2) of the subsection." *Id*. (Emphasis added.) The provision requires the court to consider seven different factors in determining the appropriate sentence, which include the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

    a. <u>A 78-month sentence is appropriate in light of the fact that the codefendant received a 51-month sentence when the codefendant was the one entrusted with 18 kilos of methamphetamine not Mr. Urias Haro</u>

The co-defendant, Carlos Urias-Lopez, was entrusted with and in possession of 18 kilos of methamphetamine. (PSR ¶ 9). After officers initiated a traffic stop following surveillance on the controlled buy, Carlos Urias-Lopez fled the scene. Inconsiderate of innocent bystanders and other drivers, Urias Lopez failed to stop after completing multiple traffic violations and fled from law enforcement officers. *Id*. he tossed the suitcase of methamphetamine and eventually fled on foot. *Id*. While he did not have a weapon in his possession, he possessed a considerably higher quantity of methamphetamine, acted recklessly, and with disregard of officers in pursuit and others on the road. Had a vehicle collision occurred, Carlos Urias Lopez could have certainly been charged with assault with a dangerous weapon, with the vehicle being the weapon based on his reckless conduct.[1] Nevertheless, since he was fortunate enough to be apprehended without issue, Urias-Lopez received the benefit of safety valve reduction.

---

[1] Under Arizona Revised Statute 13-1204(2) a person commits aggravated assault if a dangerous weapon or instrument is used. A.R.S. 13-105 (12) defines a dangerous weapon as anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury. Vehicles are frequently charged as dangerous weapons in state court.

4

On the other hand, when Mr. Urias Haro was apprehended he was cooperative, respectful, and did not try to flee unlike the codefendant. In his waistband, he was in possession of a firearm, which he possessed as he stood in a street corner selling low-level quantities of varying drugs. Mr. Urias Haro has no history of violence or threatened use of violence. He has no criminal history. However, the mere presence of the weapon in connection with the present offense prevented him from receiving a two-level reduction for having zero criminal history points and prevented a safety valve reduction. What is more, he received at two-level enhancement for the firearm.

While in his possession were small quantities of varying drugs, due to relevant conduct provisions of the United States Sentencing Guidelines, his offense level is elevated due to the codefendant's possession of the eighteen kilos of methamphetamine. As a result, he is facing a potential sentence that is three-times longer than the codefendant. It is the position of the defense that Mr. Urias Haro is not three times more culpable than the codefendant. Nevertheless, while Mr. Urias Haro was not in possession of the 18 kilos of methamphetamines nor did he stand to benefit financially, he was involved and was in possession of a firearm. As such, a slightly longer sentence appears appropriate. We submit to the court that a sentence of no more than 78 months followed by a three-year term of supervised release is sufficient but not greater than necessary.

  b. <u>A 78-month sentence will avoid unwarranted disparity among similarly situated defendants and accounts for the low-risk of recidivism in this case.</u>

`The consequences for involvement in drug trafficking are severely punished under the law and under the sentencing guidelines. In 2022, upwards of 38.6 percent of drug-trafficking defendants received a downward variance supporting a sentence below the guideline range without the benefit of a safety-valve reduction, early disposition program, or departure for substantial assistance. *Quick Facts: Drug Trafficking Offenses (May 2023)*. U.S. SENTENCING COMM'N, https://www.ussc.gov/research/quick-facts/drug-trafficking (last visited Nov. 16, 2023). The average sentence imposed for drug traffickers varied by drug type was 78 months. *Id*. For methamphetamine trafficking cases, the court's granted a variance in 36.6 percent of the cases. *Quick Facts: Methamphetamine*

*Trafficking (June 2023)*, U.S. SENTENCING COMM'N, https://www.ussc.gov/research/quick-facts/drug-trafficking (last visited Nov. 16, 2023). The average sentence for purely methamphetamine trafficking offenses in fiscal year 2022 was 95 months. *Id.*

Additionally, a sentence of 78 months, the average sentence among drug trafficking defendants is an appropriate variance based on the level of involvement by Mr. Urias Haro but also due to the low risk of recidivism. According to a 2017 publication on rates of recidivism by the United States Sentencing Commission entitled, "*The Past Predicts the Future: Criminal History and Recidivism on Federal Offenders*" there are two main factors that diminish the risk of recidivism: age and criminal history. *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* U.S. SENTENCING COMM'N, https://www.ussc.gov/research/research-reports/criminal-history-and-recidivism-federal-offenders (last visited Nov. 17, 2023). Individuals aged forty-one to fifty (41-50) at the time of release and in criminal history category I were at a 21.9 percent risk to reoffend. *Id.* at 30 (Appendix A-6). The study confirmed that individuals that are older in age when released are at the lowest risk for rearrest. Independent of age, individuals with zero criminal history points and no prior contact with the criminal justice system are at the lowest risk to reoffend; these individuals stand a 25.7 percent risk to reoffend.  The report notes, "Offenders with zero criminal history points and no prior contact with the criminal justice system had an 11.7 percentage point lower recidivism rate than offenders with zero criminal history points and some prior contact with the criminal justice system, such as arrests or convictions that do not receive points (25.7% compared to 37.4%)." *Id.*

Here, Mr. Urias Haro is a 39-year-old man who will be in his mid to late forties by the time he is released from custody.  As such, statistically speaking he stands at a low risk to reoffend. Further diminishing his risk to reoffend is the fact that Mr. Urias Haro has no criminal history whatsoever.  He has no prior felony or misdemeanor convictions, no prior arrests, and no prior negative police contact.  What is more, he has no prior immigration apprehensions or removals.

Finally, the last few months have been extremely emotionally and physically draining for Mr. Urias Haro as he has never previously been incarcerated in his life. He stresses daily for the well-being of his wife and his mother. He worries about leaving his family behind and without his support.

He vows he will never return to the United States and certainly will never engage in this abhorrent behavior. In view of the totality, Mr. Urias Haro is not likely to reoffend. Moreover, he avows he has no desire to return to the United States, not even to work in legitimate jobs. He understands that even an entry would result in a twenty-seven to thirty-three (27-33) month range as he would be assessed a ten-level enhancement for having a prior wherein a sentence of more than five (5) years was imposed due to this present offense.

      c. <u>The nature and circumstances of the offense and the history and characteristics of the defendant</u>

Mr. Urias Haro is a kind man that allowed the stress of financial hardship to lose his traditional values and as a result made really poor choices. In his 39 years of life, Mr. Urias Haro had been living a law-abiding lifestyle. Despite serious struggles in childhood and then as a father, he never broke the law. To the contrary, he tried to teach strong family values to his now adolescent children. He remains devoted to him family and devoted to living a stable and healthy lifestyle. Since this incident, Mr. Urias Haro has expressed extreme remorse and a desire to return to his family.

His family describe him as extremely hardworking, caring, and having been a good father and provider. It appears that the present incident was out of character and an act made from desperation rather than greed. Letters were previously provided to the court from family and friends requesting a second chance for Mr. Urias Haro and leniency in the sentence.

What is notable, is that among individuals who know Mr. Urias Haro and provided letters in support all described him as a kind man, a protector, and a provider for others.

      d. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.</u>

Admittedly, Mr. Urias Haro's actions were reckless, stupid, and dangerous. Mr. Urias Haro failure to think his actions through could have resulted in harm to others. Fortunately, his actions did not result in any harm. Certainly, Mr. Urias Haro had no intent to cause harm to others. As described by people who know him, Mr. Urias Haro's character is one that enjoys helping others in need and others around him. A 78-month term in the bureau of prisons sends the stern message that these actions are not taken lightly, they will be prosecuted, and the consequences will result in a loss of liberty. At the same time, Mr. Urias Haro's history of living a law-abiding life and his cooperative nature during his arrest sends the message that promptly accepting responsibility is encouraged and promotes respect for the law.

      e. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Mr. Urias Haro will be subject to ongoing supervision. He will also be transferred to immigration for the first time in his life. Given the nature of the conviction, he will face certain deportation and will never be able to obtain legal status in the United States. Indeed, a drug trafficking conviction will even impede the ability to obtain a tourist visa. Any subsequent unauthorized entry will result in a potential term of revocation as well as certain illegal re-entry charges.

This is a risk Mr. Urias Haro is not willing to take. As such, Mr. Urias Haro has every motivation to remain law-abiding in his hometown in Mexico and continue to live and work in Mexico as he had his entire life. For these reasons, a 78-month term is more than necessary to afford adequate deterrence.

. . .

 . . .

### IV. CONCLUSION

In view of the foregoing, Mr. Sabas Abraham Urias Haro respectfully requests this Honorable Court consider varying downward and impose a sentence of 78 months, such a sentence exemplifies a reasonable, fair, and just sentence and meets the applicable 18 U.S.C. §3553 factors.

Respectfully submitted: November 16, 2023.

JON M. SANDS
Federal Public Defender

 *s/Jazmin J. Alagha*
JAZMIN J. ALAGHA
Asst. Federal Public Defender

Copy of the foregoing transmitted
by ECF for filing November 16, 2023, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

Stuart Zander
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to:

Mr. Sabas Abraham Urias Haro
Defendant

U.S. Probation

*s/J. Alagha*
J. Alagha /